TRAVELERS' INS. CO. (UNTHANK v.). See Case No. 16,795.

TRAVELERS' INS. CO. (WHITEHOUSE v.). See Case No. 17,566.

## Case No. 14,147.

### The TRAVELLER.

[6 Ben. 280; [1] 16 Int. Rev. Rec. 198.]

District Court, E. D. New York. Dec. 5, 1872.

PILOTS—HALF PILOTAGE—NAVIGATING HELL GATE.

Under the Hell Gate pilotage act of the state of New York (Sess. Laws 1847, p. 85, and 1865, p. 197), when a vessel in the port of New York has entered upon a voyage, which will carry her through Hell Gate, she is bound to employ the first pilot who tenders his services to pilot her through Hell Gate, or, in case of refusal, to pay him half pilotage; and she is none the less liable to pay the half pilotage, if, for any reason, the voyage through Hell Gate is not completed.

[Cited in The Kalmar, Case No. 7,601; The Glaramara, 10 Fed. 680.]

In admiralty.

Wilcox & Hobbs, for libellant.

R. H. Huntley, for claimant.

BENEDICT, District Judge. This is an action by Francis Bell, a Hell Gate pilot, to recover half pilotage, brought before the court upon an exception to the libel that it states no cause of action.

The libel avers that the schooner Traveller was a licensed vessel, of over 100 tons burden, drawing nine feet of water, and about to navigate the channel known as Hell Gate, and bound from Hoboken to Portland, Maine; that the libellant discovered the schooner in the North river, at a point off Hoboken, and thereupon put off to and hailed her, and duly offered his services to pilot her through said Hell Gate channel, and was refused, and that libellant was the first pilot so offering to pilot the schooner.

To this averment the objection is made, that it fails to show that the vessel, at the time of the alleged tender, was navigating the channel of Hell Gate, whereas, it is claimed, only vessels so navigating are made liable to pay half pilotage by the seventh section of the Hell Gate pilot act.

I have had occasion heretofore to consider the effect of the language of the section referred to, in the case of an inward bound vessel boarded to the east of the Gate. The present is the case of a vessel on the west side of the Gate, and, as said in the case referred to (Horton v. Smith [Case No. 6,709]) so here it is to be said that the words, "navigating the channel of Hell Gate," if considered as intended to limit the effect of the section to vessels which come within this description, do not require the pilot's tender of service to be made while the vessel is in the act of passing the Gate. By reference to other parts of the statute, it appears that vessels, inward bound while as far to east as Execution Rock, are intended to be included within the description of vessels referred to in the seventh section; and, by reference to the subsequent part of the eleventh section,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

it will be seen that vessels outward bound through the sound, not yet having reached the sound, are also intended to be included within its scope.

The latter part of the seventh section provides for the liability of vessels under 100 tons burden, and then describes them as "vessels navigating the said channel to and from the port of New York." It is clearly to be seen, however, that the object of the section is to provide for two classes of vessels, namely, those over and those under 100 tons burden, without any design of providing for more than two classes of cases, and distinguishing them by the size of the vessel. The words "navigating the said channel of Hell Gate," used in the first part of the section, must, therefore, be considered as intended, at least, to cover any vessel coming within the description repeated in the latter part of the section, that is to say, navigating to or from the port of New York, and from any part of the port, when on a passage through the Gate.

This construction of the act derives support from the consideration, that a more narrow construction of the statute would have the effect to prevent pilots from tendering their services to vessels until just as they enter the Gate, a result contrary to the general design of pilot laws, which in most cases aim to secure the services of a pilot at the earliest possible time; while, understood as I have here indicated, the tendency of the statute will be to furnish a class of vessels, often short handed, with an extra man competent to give efficient aid in the navigation to a crowded harbor, where great care and watchfulness is required, and this without any additional charge upon the vessel, as the amount of pilotage depends on the tonnage and not on the distance to west of the Gate.

My conclusion, therefore, is, that it is no objection to a recovery in this case, that the libel avers that the vessel was, at the time of the tender, in the North river, off Hoboken, that being a point within the port of New York.

Nor do I attach any weight to the suggestion, that the libel omits to aver that the vessel ever in fact passed through the Gate.

Half pilotage becomes due by reason of a tender made to a vessel at the time supposed by the law to require a pilot. If the vessel at the time of the tender was on a voyage bound through the Gate, a subsequent change of voyage, or failure for any reason to attempt to pass the Gate, can have no effect upon the right of the pilot, which became fixed by the refusal of his services.

But I am of the opinion, that in order to recover in this action, it must appear on the face of the libel that, at the time of the tender and refusal, the vessel was engaged in the prosecution of a voyage which would carry her through the Gate. Until such a voyage has begun, the master is not called on to meet the question of the employment of a pilot; but, when he has entered upon such a voyage, and is bound from the port of New York through the Gate, then the law presumes him to be in need of a pilot, and compels him to take the first pilot who offers or pay him half pilotage. The present libel is defective, therefore, in that it fails to show that at the time of the tender the vessel had entered upon her voyage. If the vessel in question, when boarded, was lying at anchor off Hoboken, preparatory to commencing a voyage, and the statement in the libel is consistent with such a state of facts, in my opinion, the libellant cannot recover. The libel must be reformed in this particular before a recovery can be had.

The exception is, therefore, allowed, with liberty to amend the libel, the costs of the claimant upon the present hearing to abide the event.